## Lackey *vs.* Richmond and Lancaster Turnpike Road Company.

Case 7.

| 17bm 43 |
| 105 173 |

### APPEAL FROM GARRARD CIRCUIT.

ORD. PET.

1. The court of appeals will take judicial notice of the acts of the legislature of the state, *(Rev. Stat., 311,)* where they appear to have been relied on in the inferior court.

2. Where a charter prescribes the form of a subscription for stock as "to the president, directors," &c., it is no objection to the validity of the subscription that the company was not organized at the date of the subscription. The instrument takes effect so soon as the obligees come into existence. And the company may sue by its corporate name.

3. Members of an incorporated road company are competent witnesses for the company. (*Code of Prac., sec.* 675.)

4. A subscriber for stock in a turnpike company, who subscribes under a belief that the road will be located on a particular route, but

who annexes no condition to his subscription, will be bound to pay his stock, unless the subscription was superinduced by some fraud in the agent who procured the subscription.

5. To authorize a turnpike company to collect installments of stock according to their calls, with ten per cent. interest, the company must strictly pursue the requisitions of the charter on that subject by giving notice, &c.

[The facts of the case are stated in the opinion of the court.—REP.]

*Turner* and *Dunlap* for appellant—

The appellant insists upon a reversal of the judgment on the following grounds:

1. This court cannot judicially take notice of any act of assembly local in its character, unless it be given in evidence on the trial. (*Rev. Statutes, p.* 311, *sec.* 1.)

2. The subscription of Lackey is void and of no binding force, because there existed no such company as obligee at the date of the subscription.

3. The court erred in its first instruction to the jury, in which the court say to the jury, that if Lackey made the subscription, and the same was demanded of him according to the orders of record from the journal, and he failed to pay the same within thirty days after the demand, he is liable for the sum so demanded, and ten per cent. per annum on each sum from the time of the demand. The court also erred in the second instruction: That if Lackey failed, on demand, to pay his subscription on the ground that it was not binding on him; and that more than three years elapsed from the time of such refusal before the action was brought, he is liable for the whole subscription, with ten per cent. per annum.

These instructions are erroneous, as they take from the jury the consideration and decision of the facts relied upon by Lackey to show that the subscription was not binding on him, or, if ever binding, that he was released by the action of the company, when there was evidence conducing to the proof of both those facts.

The proof shows that Lackey believed when he subscribed, that the location of the road would be of great convenience to him if located as he then believed it would be located. And that, induced by subscriptions to the amount of some $8,000, the company changed the contemplated location, rendering it of little or no use to Lackey. The case is not like that of *McMillen vs. The Lexington and Maysville Railroad*, 15 *B. Monroe*, 233. That was a conditional subscription, and the question was whether the condition had been performed.

4. The court improperly permitted Yantis, Burdett and Doty, stockholders of the company, to give evidence on behalf of the company. A fair construction of the provisions of *section* 670, 6 *subdivision—sections* 674 *and* 675, will exclude their testimony.—They are personally interested.

By the 12th section of the act of 1847–8, page 276, the president of the road is required to give thirty days' public notice of the amount called on each share of stock, of the time of payment, &c.; and any stockholder refusing payment for the space of thirty days after the time appointed for payment, shall have judgment entered against him for the amount, with interest at ten per cent. per annum until paid. The petition of plaintiff avers notice according to the provisions, intent, and meaning of the act, and amended act, to pay the $200, and his refusal to pay. These averments are insufficient. The pleadings should set forth facts, and leave the deductions of law to be made by the court. The averments of fact in the plaintiff's petition do not show a good cause of action. The charter did not authorize a call of more than one-sixth of any subscription within less than six months. (See *section* 7 *of the charter.*) The petition does not directly or indirectly alledge that more than one call had been made upon Lackey, nor does it anywhere alledge when the president gave notice of any call, or that the time of payment was fixed in any such notice, or what

LACKEY
*vs.*
RICHMOND AND
LANCASTER T. P.
R. Co.

amount was required, or at what place the payment was to be made, or that Lackey had refused payment for thirty days after the time appointed for payment. Hence the court should have instructed the jury, as requested, to find for the defendant. (*Logan, Todd and Christian Turnpike Road Company vs. Glass*, 3 B. Monroe, 494 *to* 497.)

If there is any right of recovery made out, there is not shown a right to ten per cent. on that recovery at farthest beyond the amount of the call, from the time it should have been paid. And there is no proof that thirty days' notice was given of any one installment, and the time of its payment. This notice did not authorize the judgment for ten per cent. (*Turnpike Road Company vs. Meriwether*, 5 B. Monroe, 14.)

The court erred in permitting the records of the road company to be read without any proof of their correctness.

*A. A. Burton* for appellees—

1. There was no proof of any unfairness in obtaining Lackey's subscription to the road. His own declarations as to what he expected when he subscribed stock, are incompetent to prove anything for him in the case.

The charter designates no particular route for the road from Richmond to Lancaster, except that it shall cross Paint Lick at or near the widow Denny's, and pass within one mile of Paint Lick meeting-house. Before the appellant subscribed, two routes had been spoken of between Lancaster and Paint Lick. That by Spilman's and that by Royston's. Considerable rivalry was gotten up between these two routes. The subscription was presented to Lackey by Doty, in presence of Yantis and Anderson—he subscribed without any assurances that the road would be located on any particular route. There is no pretense for the charge of fraud, and all instructions on that point were properly overruled.

2. The 7th section of the act of 1847-8 directs the manner of collecting subscriptions by installments. It is not pretended that the directory pursued this method technically in regard to appellant, who declared from the first that he would not pay any part of it, on the alledged ground of fraud—he never objected to the time, nor the amount demanded. All that was left for the company was to wait until the whole subscription was due, and then compel pay-ment. The whole subscription was due if the calls had been regularly made as prescribed by the charter, and the instruction of the court that plaintiff had a right to recover the whole was correct.

Chief Justice Marshall delivered the opinion of the court:

Although the act of incorporation may not have been read in evidence on the trial, the action is obviously founded on it; the writing sued on recognizes it; it is referred to by both parties, and having been thus manifestly relied on by the circuit court, this court is to take judicial notice of it. (*Revised Statutes*, 311.) If the statutes thus referred to and identified, have been properly interpreted and applied, we suppose this court ought not to reverse the judgment, because that which was assumed or admitted by the parties, and understood by them and the court to be the basis of the proceeding and the test of the rights of the parties, was not formally read upon the trial, or is not stated in the bill of exceptions to have been formally read. It can scarcely be doubted that such portions of the original and amended charter as were applicable, if not actually read, were stated by counsel, at least, in their discussions before the court. And we do not suppose that our knowledge and application of the provisions of the charter are, under these circumstances, to depend upon the question whether the record shows that these provisions were actually read in the inferior court. The Revised Statutes requires only that it shall appear to

LACKEY
*vs.*
RICHMOND AND
LANCASTER T. P.
R. Co.

June 12.

1. The court of appeals will take judicial notice of the acts of the legislature of the state, (*Rev. Stat.* 311,) where they appear to have been relied on in the inferior court.

LACKEY
vs.
RICHMOND AND
LANCASTER T. P.
R. Co.

2. Where a charter prescribes the form of a subscription for stock, as to the president directors, &c., it is no objection to the validity of the subscription that the company was not organized at the date of the subscription. The instrument takes effect so soon as the obligees come into existence. And the comp'y may sue by its corporate name.

3. Members of an incorporated road company are competent witnesses for the company. (Code of Prac., sec. 675.)

4. A subscriber for stock in a turnpike company, who subscribes under a belief that the

have been relied on, and it manifestly does so appear.

As the charter prescribes the form of the instrument to be subscribed in taking stock, and requires a promise to pay the president, directors and company, before the company is to be organized, or any officers elected, and makes such subscription obligatory and enforcible when the company is organized, the fact that there were no obligees in existence at the date of the subscription, is not an available objection. The instrument must have force and effect when the obligees come into legal existence. And although the promise, in terms, is to pay to the president, directors and company, it is in legal effect a promise to pay to the company, which has therefore the right to sue upon it by its corporate name of the Richmond and Lancaster Turnpike Road Campany, which name in fact includes the president, directors and company, and is co-extensive, and therefore actually, though not literally, identical with it.

Section 675 of the Civil Code, expressly capacitates members of a corporation to be witnesses in its behalf. The fact, therefore, that as members of the corporation they are interested in the issue to which it is a party is not an available objection. If the legal existence and organization of the company could be collaterally questioned in this action, there is evidence not only of its acts as a company, but of its legal organization, which, there being no evidence to the contrary, authorizes the assumption of its legal existence. There is also sufficient evidence of the several orders of the directors making calls upon the subscriptions of stock, from which it appears that in the amounts and periods of the calls they did not exceed their authority nor infringe the charter.

These preliminary questions being disposed of, the substantial inquiry in the case is whether the subscription of the defendant, which is without express condition as to any location of the road, was, as is alledged, procured by fraud or is otherwise unoblig-

atory; and whether if it be obligatory, the plaintiffs have now a right to recover the whole or any part of it, and if so, what interest is chargeable against him for his failure to pay?

The defendant subscribed for two shares, and by his subscription expressly promised to pay $100 on each, in such manner and proportions, and at such times, as shall be required by the president and directors, and agreeably to an act and amendatory act incorporating said company. The allegation of fraud in the procurement of his signature rests upon these facts: At the time of his subscription two routes for the proposed road were and had been spoken of in the neighborhood—one by Spilman's, which ran about a mile from Lackey's, the other by Royston's, which ran farther off, and was of little or no advantage to him. Whether Lackey had heard of this last route is only a matter of inference from the fact that it was spoken of, and that he was a man of intelligence. It was not mentioned when he subscribed. He seems to have had no apprehension that the road would be located on that route—made his subscription under the belief that it would be located on the Spilman route, and would not have subscribed at all, or, as one witness thinks, for not more than one share, if he had suposed that it would be located on the other route, which was afterwards selected. But he not only did not make the desired or expected location an express condition of his subscription, but it is not shown that the commissioner or agent who procured it, made any promise or representation on the subject, or that even if he knew that Lackey expected (as he himself may have expected,) that the road would be located on the Spilman route, anything occurred to make Lackey's subscription dependent upon that location. If he intended that it should be so, he should have attached this condition to his subscription. Having failed to do this, the impression under which he subscribed cannot affect his obligation, unless it was produced by the improp-

LACKEY
*vs.*
RICHMOND AND
LANCASTER T. P.
R. Co

road will be located on a particular route, but who annexes no condition to his subscription, will be bound to pay his stock, unless the subscription was superinduced by some fraud in the agent who procured the subscription.

er conduct of some agent by whom the subscription was procured. And as all must have known that the location of the road, except so far as prescribed by the charter, would be a matter to be determined by the company or its officers, the belief of a subscriber that a particular route would be chosen, though known to the person procuring the subscription, could not, unless improperly induced by him, make the choice of such route a condition of the subscription.

There is, in our opinion, no evidence of impropriety in the procurement of Lackey's subscription, which can make its validity depend upon the location of the road in conformity with his expectation at the time. And the subscription being free from such condition, and the company being at liberty, even upon the facts then existing, to exercise its discretion with regard to the route, the subsequent choice of a different route recommended by a large subscription made subsequently upon condition of the selection of that route, was neither illegal nor fraudulent as to the previous unconditional subscriber, and did not diminish or affect the legal obligation of his subscription. It appears that without this conditional subscription, which was considerably larger than the unconditional, the road could not have been made, as contemplated by the charter, and probably not to any useful extent, and that there is little difference in the suitableness of the two competing routes.— We conclude, therefore, that this subscription was binding upon the defendant, and that he was bound to pay according to its terms.

One section of the charter (Session Acts, 1847–8, sec. 7, p. 274,) authorizes calls upon subscribers, not exceeding one-sixth of their subscriptions, in every six months. The 12th section enacts, that the president shall give thirty days' public notice of the amount called on each share of stock, and of the time of payment; and that if a stockholder fails to pay the call for the space of thirty days after the

time appointed, he shall be liable to a judgment for the same, with interest at the rate of ten per cent. per annum until paid. According to the principles of the case of the *L. and E. T. P. R. Co. vs. Merriwether*, 5 *B. Monroe*, 13, although an exact pursuance of this section is necessary to entitle the company to recover interest at the rate of ten per cent., it is not necessary to authorize a recovery of the principal and legal interest of the calls made under the 7th section, which authorizes calls at a rate not exceeding one-sixth every six months.

In this case the calls made by the successive orders of the board required payment of the entire sum of $100 on each share, in six installments—two of ten, and four of twenty per cent.—made at such intervals as not to exceed the prescribed rate for every six months. The, first of ten per cent., was on the 6th of February, 1852, and the last, also of ten per cent., on the 6th of February, 1854. As they do not prescribe the time of payment, or manner of notice, and as it does not appear that thirty days' notice fixing a time of payment, was given, the plaintiff was certainly not entitled to recover the amounts with ten per cent interest. It is proved, however, that public notice was given by the treasurer of the company, of the four first calls, in a manner furnishing a reasonable presumption that it reached the defendant, and that he demanded the two last calls from the subscribers, and from the defendant, personally, when the defendant refused payment on the same alledged grounds on which he now resists it, but which are not proved by his alledged reasons for refusing payment, the admission of which in evidence was improper. And upon the principles of the case above referred to, assuming the notice of the four first calls to have been reasonable, upon that notice, and the personal demand, the defendant is bound to pay all of the calls, with interest at the rate of six per cent. per annum from a reasonable period after notice of each, which in analogy to the

*Margin notes:*

LACKEY
vs.
RICHMOND AND
LANCASTER T. P.
R. Co.

5. To authorize a turnpike company to collect instalments of stock according to their calls, with ten per cent. interest, the company must strictly pursue the requisitions of the charter on that subject, by giving notice, &c.

time fixed by the charter, we fix at thirty days after the personal demand, and sixty days after the posting up of public notices of each of the four first calls.

The instructions given by the court, make the defendant liable for ten per cent. interest upon the amount of his subscription from the periods when they are supposed to have been payable, and the verdict, after deducting the sum remitted, is for a larger sum than, according to the principles just stated, was due at the time of trial. And for this error the judgment is reversed, and the cause remanded for a new trial in conformity with the principles of this opinion.